UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WESTERN NATIONAL MUTUAL INSURANCE COMPANY, | Case No. 19-CV-2950 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| SPEEDWAY, LLC, | |
| Defendant. | |

In this declaratory judgment instituted by Western National Mutual Insurance Company ("Western National"), the parties ask the Court to determine whether Speedway, LLC ("Speedway") is an additional insured under the terms of an insurance policy issued to Lawn Monster, LLC ("Lawn Monster"). Both parties have moved for summary judgment. (ECF Nos. 36, 40.) For the reasons that follow, the Court grants Western National's motion and denies Speedway's motion.

## BACKGROUND[1]

Under the terms of a Service Contract, Lawn Monster agreed to perform snow and ice removal services for Speedway's Mound, Minnesota location. (ECF No. 35-1, Ex. A ("Service Contract"); Joint Stip. ¶ 1.) Lawn Monster's responsibilities include "plowing

---

[1] The Court draws the background from the joint stipulation of uncontested facts. (ECF No. 35 ("Joint Stip.").)

1

each time accumulation [of snow] reaches 2 [inches] in depth while the store is open for business." (Service Contract ¶ 1(A)(i).) This plowing service includes "removal of all snow" from gasoline and diesel dispenser fueling areas. (*Id*.) "Plowing can occur multiple times in the same 24 hour period at such time when accumulation of snowfall exceeds 2 [inches] from the time of the previous plowing service. Each plowing is considered a separate event and requires individual detail on the invoice submitted for the service." (Joint Stip. ¶ 3 (quoting Service Contract ¶ 1(A)(v)).) The Service Order also provides that Speedway must issue a ticket when it wants Lawn Monster to apply salt in response to freezing rain, slush, black ice, and refreeze. (Joint Stip. ¶ 4 (citing Service Contract ¶ 1(C).) The term of the Service Contract is October 2018 through March 2021. (Joint Stip. ¶ 5 (citing Service Contract ¶ 2).)

The Service Contract requires Lawn Monster to indemnify and defend Speedway "against all actions, claims, damages, demands, suits and other liabilities . . . arising out of, in whole or in part, . . . any act or omission in the performance of this contract." (Service Contract ¶ 5.) It also requires that Speedway be added as an additional insured to Lawn Monster's insurance policy. (Service Contract ¶¶ 5–6; Joint Stip. ¶¶ 6–7.)

As required, Lawn Monster added Speedway as an additional insured to the Businessowner's Policy it had with Western National. (Joint Stip. ¶ 16.) That policy was in effect from June 29, 2018, through June 29, 2019. (ECF No. 1-1 ("Policy")[2] at 1.) The

---

[2] As the Policy is not consistently paginated, the Court uses the ECF page numbers.

2

Policy provides in relevant part that Western National "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id*. at 35.) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged. 'Suit' includes . . . [a]n arbitration . . . or [a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." (*Id*. at 50.)

The Additional Insured Endorsement to the Policy provides:

Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   a. Your acts or omissions; or
   b. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the

3

> additional insured(s) at the location of the covered operations has been completed; or
> b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Policy at 133.)

Lawn Monster plowed the Speedway on December 28, 2018, after 10:00 p.m. (Joint Stip. ¶ 18.) The following morning at approximately 11:00 a.m., customer Jane Noethe allegedly fell due to "a considerable amount of snow and ice buildup around the gas pump area under the awning" at the Speedway location.[3] (Joint Stip. ¶¶ 17, 21 (quoting Noethe's notice of claim); ECF No. 35-1, Ex. B.) Lawn Monster had not plowed after 10:00 p.m. the previous evening, and Speedway had not issued any tickets for service between Lawn Monster's plowing and Noethe's fall. (Joint Stip. ¶¶ 18–19.) Noethe's attorney served Speedway with a notice of her claim. (ECF No. 35-1, Ex. B.) As of the date of this Order, it does not appear that Noethe has commenced a suit based on the alleged fall. (*See* Joint Stip. ¶ 22.)

Speedway tendered the Noethe claim to Western National for defense and indemnity, which Western National denied. (Joint Stip. ¶¶ 23, 24; ECF No. 35-1, Exs. C, D.) Western National then brought this declaratory judgment action requesting this

---

[3] The parties dispute whether the snow that allegedly caused Noethe to fall was there due to Lawn Monster's failure to clear "all snow" from the gas pump area, additional snowfall, or snow from customer vehicles accumulated by the pump. (ECF No. 45 at 2.)

4

Court to declare that it owes no obligation to defend or indemnify Speedway under the terms of the Policy and endorsement. (ECF No. 1.) Speedway counterclaimed, requesting a declaration of the opposite. (ECF No. 11.) The parties now move for summary judgment.

## LEGAL STANDARD

### I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### II. Duty to Defend and Insurance Contract Interpretation

Both parties seek a declaration as to whether Western National has a duty to defend the Noethe claim against Speedway. "Whether an insurer has a duty to defend is a question of law." *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008) (citing *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996)). "The duty to defend is broader than the duty to indemnify in three ways: (1) the duty to defend extends to every

5

claim that 'arguably' falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims." *Wooddale Builders, Inc. v. Maryland Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006). Thus, if *any* claim is arguably covered under a policy, the insurer must defend the entire action and reserve any arguments regarding coverage—even if the claims are "meritless, groundless, or fraudulent." *Wiring by Weir, Inc. v. Federated Mut. Ins. Co.*, No. C8-95-1837, 1996 WL 70037, at *2 (Minn. Ct. App. Feb. 20, 1996) (unpublished) (citing *Kipka v. Chi. & Nw. Ry. Co.*, 289 F. Supp. 750, 755 (D. Minn. 1968) (insurer has duty to defend even if complaint is "spurious, fraudulent or false.")).

Whether a duty to defend exists "is determined by comparing the language of the allegations in the underlying complaint to the relevant language in the insurance policy." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012) (citations omitted). Here, the parties advocate different interpretations of the Policy. The Court interprets an insurance policy consistent with general principles of contract construction under Minnesota law, giving effect to the intent of the parties. *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)). The Court gives unambiguous language its "plain, ordinary, and popular meaning." *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009) (citation omitted). If the policy language is ambiguous, that is, "susceptible to two or more reasonable interpretations," it will be construed against

the insurer. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). Each word in the policy should be interpreted to have a meaning, rather than be redundant or superfluous. *Econ. Premier Assurance Co. v. W. Nat'l Mut. Ins. Co.*, 839 N.W.2d 749, 756 (Minn. Ct. App. 2013). Courts must "attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) (citation omitted). "Exclusions contained in an insurance policy are as much a part of the insurance contract as any other part, and must be given the same consideration in determining what the policy covers." *Thommes*, 641 N.W.2d at 880.

## ANALYSIS

### I.     Duty to Defend

Western National argues that the Court should declare summary judgment in its favor because its duty to defend or indemnify has not been triggered by an underlying suit. This argument misconstrues the procedural posture of this case. Western National brought a declaratory judgment action about the rights and obligations it had under the Policy after Speedway made a clear demand for defense and indemnity with respect to the demand letter it received from Noethe. Once a clear demand for payment of defense and indemnity costs has been made, and the insurer disputes those costs, "there is a live justiciable controversy" and the court may declare the rights and obligations under the terms of the policy. *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th

7

Cir. 1992); *see also Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 934 (8th Cir. 2010) (holding that where an insured has made a demand and the insurer has contended that there are no circumstances where it will be liable under the policy a declaratory judgment action is ripe).[4] The Court may declare the scope of the insurance coverage in these circumstances. *See, e.g.*, *Emps. Mut. Cas. Co. v. Lockwood*, No. 10-3504-CV-S-RED, 2011 WL 13234293, at *1–*2 (W.D. Mo. Apr. 18, 2011) (finding the court could declare the scope of an insurance policy where the claimant had not filed an underlying case but had sent a demand letter to the insured and the insurer notified the insured it did not consider the claim to be within the scope of the policy).

Speedway argues that the Court can go one step further and declare that there is a present duty to defend and indemnify because the Noethe claim is a "suit" under the terms of the policy. The Court cannot go so far. The Policy defines a suit as "a civil proceeding in which damages because of bodily injury, property damage, or personal and advertising injury to which this insurance applies are alleged." (Policy at 50 (quotation marks omitted).) As it does not appear that Noethe has commenced any type of proceeding against Speedway, there is no "suit" within the terms of the Policy.

The cases Speedway cites in support of its argument do not compel a different result. Those cases find that the actions taken against the insured had the legal effect of

---

[4] Although Western National poses this argument as an issue of contract interpretation, courts appear to treat similar arguments as an argument that the courts lack subject-matter jurisdiction over the claim because it is not ripe. Regardless, the argument fails.

8

commencing a proceeding against the insured. *See, e.g.*, *Land O'Lakes, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 846 F. Supp. 2d 1007, 1012, 1020 (D Minn. 2012) (noting that numerous courts have held that a "potentially responsible party" letter from the Environmental Protection Agency is the functional equivalent of a "suit" because failing to act upon the letter has legal consequences); *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 315 (Minn. 1995) *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910 (Minn. 2009) (holding a request for information from the Minnesota Pollution Control Agency constituted a "suit" under the policy because failure to respond to the request carried legal consequences). Here, the Noethe claim has the legal effect of starting the period for claiming damages, but it does not serve to commence any proceedings. As such, the Court can declare the scope of the Policy, but the Policy is not in effect until Noethe files a "suit" under the terms of the Policy.

## II.     Additional Insured Endorsement

The parties' main dispute is whether Speedway is an additional insured under the Policy for the purposes of the Noethe claim. The Additional Insured Endorsement provides that Speedway is "an additional insured, but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [Lawn Monster's] acts or omissions . . . *in the performance of [Lawn Monster's] ongoing operations* for [Speedway]" at the Mound, Minnesota location. (Policy at 133 (emphasis added).) Under the endorsement's completed operations exclusion, additional insureds are not afforded coverage for bodily

9

injury "occurring after [a]ll work . . . to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed." (*Id.*) As the insured, Speedway "bears the initial burden of demonstrating coverage"; Western National, as the insurer, bears "the burden of establishing the applicability of exclusions." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).

The parties dispute whether Lawn Monster's operations under the Service Contract constitute "ongoing operations" under the Additional Insured Endorsement. This issue turns on the terms of the Service Contract, which determines what operations Lawn Monster has undertaken to perform. The Service Contract provides that Lawn Monster is responsible for plowing "all snow" each time it accumulates to two inches, including plowing all snow from the gasoline fueling areas. (Service Contract ¶ 1(A)(i).) The Service Contract also states that "[e]ach plowing is considered a separate event and requires individual detail on the invoice submitted for service." (*Id.* ¶ 1(A)(v).) Aside from the two-inch accumulation trigger, Speedway must issue a ticket for Lawn Monster to act. (*Id.* ¶ 1(C).)

Western National maintains that under the Additional Insured Endorsement, Speedway only has coverage as an additional insured for bodily injury that occurs while Lawn Monster is on the premises actively clearing snow. It relies on *KBL Cable Services of the Southwest, Inc. v. Liberty Mutual Fire Insurance Co.*, in which the Minnesota Court of Appeals held that an insured's obligations under a construction-and-maintenance-work

10

contract were not ongoing under an additional insured endorsement. No. A04-538, 2004 WL 2660709, at *1 (Minn. Ct. App. Nov. 23, 2004). There, the secondary insured (KBL) sent the insured to fix a power cable, which required a temporary repair, and planned to issue another work order to complete the repair at a later time. *Id.* at *3. Before KBL asked the insured to return, someone was injured by the temporary repair. *Id.* KBL sought coverage under the secondary insured endorsement, which provided coverage for the insured's ongoing operations that have not been completed. *Id.* at *2. As in this case, the parties disputed whether the insured's operations were ongoing or complete. The policy did not define "ongoing operations"; the court noted that "[t]he dictionary definitions of 'ongoing' are 'currently taking place' and 'in progress or evolving.'" *Id.* at *3 (quoting *The American Heritage Dictionary of the English Language* 1265 (3d ed. 1992)).

The *KBL* court found that under the terms of the contract, the insured's operations were not ongoing at the time of the injury because the insured was given a work order for each project, and there was no understanding of when the insured would return to the worksite or certainty of whether it would return at all. *Id.* at *3. The fact that a final repair was needed did not make the operations ongoing because initiation of the final repair was entirely under KBL's control; indeed, KBL was not even required to hire the insured to complete the repair. *Id.*

In *Okroley v. Doro, Inc.,* the court held that a completed operations exclusion in an automobile policy precluded coverage of a slip-and-fall injury that occurred in

11

connection with a snow removal contract. No. 2015AP806, 2016 WL 4083553, at *1–*2 (Wis. Ct. App. Aug. 2, 2016). Like the Service Contract here, in *Okroley* the contract required the contractor (Burchell) to plow snow in a restaurant parking lot when at least 1.25 inches of snow fell, and was not to salt the parking lot unless the restaurant requested it. *Id*. at *1. The contractor had finished all snow plowing operations in the parking lot the day before Okroley slipped and fell on black ice. *Id*. The court rejected the argument that the contractor was working "under an ongoing services contract." *Id.* at *2.

> In the absence of another snowfall in excess of 1.25 inches, Burchell had no further duties with respect to the premises. Burchell had indisputably finished all snow plowing operations the day prior to Okroley's injury, and he was not otherwise obligated to return to the premises prior to Okroley's injuries. Burchell's snow removal responsibility was completed before Okroley's slip and fall in the Hardee's parking lot, and the completed operations clause unambiguously excluded from coverage the risks that form the basis of Okroley's cause of action.

*Id.* at *2.

As with the circumstances of *KBL* and *Okroley*, Lawn Monster finished plowing the snow well before Noethe's fall. If Speedway never sent Lawn Monster another ticket and there were no other two-inch snow accumulations, Lawn Monster may never have returned to the Speedway. Thus, its operations were not "ongoing," *i.e.*, not "currently taking place," or "in progress or evolving." *KBL*, 2004 WL 2660709, at *3 (quoting *The American Heritage Dictionary of the English Language* 1265 (3d ed. 1992)).

Speedway asserts that Lawn Monster's operations are "ongoing" during the entire term of the Service Contract (from October 2018 through May 2021) and that Speedway

12

is covered under the Additional Insured Endorsement because the Noethe claim alleges bodily injury arising out of Lawn Monster's acts or omissions in the performance of the Service Contract. Contrary to Speedway's repeated assertions, the Additional Insured Endorsement does not include the phrase "arising out of."[5] (*E.g.*, ECF No. 42 at 12; ECF No. 44 at 1, 2, 9, 12.) Speedway appears to conflate the issue of additional insured coverage with the potential liability for the underlying claim. (*See* Service Contract ¶ 5 (requiring Lawn Monster to indemnify and defend Speedway against all claims "arising out of, in whole or in part, . . . any act or omission in the performance of this contract").) The issue before the Court is whether Noethe's injuries were caused by Lawn Monster's "ongoing operations," such that Speedway is covered as an additional insured under the Policy.

Speedway relies on several cases, none of which is directly on point. In *K-Mart Corp. v. Clean Sweep, Inc.*, the Minnesota Court of Appeals found the insurer had a duty to defend the additional insured in connection with a claim based on the improper removal of snow from a K-Mart parking lot. No C9-97-703, 1997 WL 666088 (Minn. Ct.

---

[5] The Additional Insured Endorsement covers liability for injuries "caused, in whole or in part, by" the acts or omissions of Lawn Monster in performance of its ongoing operations. (Policy at 133.) The parties do not address whether Minnesota courts construe the phrase "caused, in whole or in part, by" differently from the phrase "arising out of." As such, the Court will follow the principles of Minnesota law addressed above. *See Harleysville Ins. Co. v. Physical Distrib. Servs., Inc.*, 716 F.3d 451, 459 (8th Cir. 2013) (declining to rely on case law addressing the phrase "arising out of" when interpreting an insurance policy that included the phrase "caused, in whole or in part," instead "rely[ing] on fundamental principles of Minnesota law").

App. Oct. 28, 1997). There, K-Mart had contracted with Clean Sweep to remove snow, and Clean Sweep's insurance policy named K-Mart as an additional insured for "liability 'arising out of' its 'ongoing operations performed for [K-Mart].'" *Id.* at *1. On the day in question, Clean Sweep plowed, then additional snow accumulated, after which a person fell in the parking lot. *Id.* The court found that Clean Sweep's and K-Mart's liability "arose out of the same operations: snow removal that had been contracted to Clean Sweep." *Id.* Despite the superficial similarity in facts, the Court finds this opinion to be of little help. The issue here is whether Lawn Monster's operations are ongoing, and *K-Mart* does not address the terms of the snow removal contract, or whether Clean Sweep's operations were "ongoing" under the policy terms.

Speedway's next case is *Employers Insurance Company of Wausau v. Harleysville Insurance Company of New Jersey*, which involved a service contract in which the insured agreed to plow, "as needed at . . . [its] sole discretion," "any and all" snow from the additional insured's parking lot. No. CIV. A. 05-4900 (NLH), 2008 WL 4066329, *4 (D.N.J. Aug. 26, 2008). When a customer slipped and fell in the parking lot four days after the insured plowed, the additional insured sought a declaration that the insurer owed a duty to defend under the additional insured endorsement, which provided coverage "arising out of [the insured's] ongoing operations performed for [the additional] insured." *Id.* at *2. The court rejected the insurer's argument that operations were completed rather than ongoing, noting that such an interpretation would effectively limit the policy to

14

injuries occurring while the insured was "in the process of plowing and salting an unspecified, yet sufficient, amount of snow." *Id.* at *4. The court instead focused on the policy language, explaining that "[s]imply looking at the 'ongoing operations' language independent of the 'arising out of' language impermissibly narrows the policy coverage." *Id.* at *5. It held that the insured had a duty to defend because the bodily injury "arose out of [the insured's] ongoing obligation to plow and salt," even where the insured is not actively plowing. *Id.; see id.* at *5–*7 (discussing the term "arising out of" in additional insured provisions as being broadly construed in New Jersey); *see also Sabia Landscaping v. Merchs. Mut. Ins. Co.*, No. CIV. A. 13-3820, 2013 WL 6022129, at *3–*4 (E.D. Pa. Nov. 6, 2013) (finding claim was potentially not excluded from coverage by a completed operations hazard exclusion where the service contract revealed "ongoing and as-needed obligations beyond mere 'maintenance' or 'correction'" where the contract required the insured to "remove snow 'once the storm has ended,' 're-plow when snow accumulations again reach 5 [inches]' and return the following day to 'ensure that all traffic areas are free from slippery or icy conditions'").

The Court does not find these cases persuasive: the Service Contract here does not provide that Lawn Monster will plow snow "as needed" or "at its sole discretion"; rather, its responsibility is limited to plowing when two inches of snow accumulates. Because Lawn Monster is not required to return to Speedway unless the snow accumulates to two inches or Speedway issues a ticket, its operations are not "currently taking place" or "in

15

progress or evolving." *KBL*, 2004 WL 2660709, at *3. While Speedway claims Lawn Monster's operations were ongoing because it is required to remove "all snow," (ECF No. 44 at 14), this obligation is limited by the two-inch accumulation trigger. (Service Contract ¶ 1(A)(i).) Lawn Monster is not required to remove all snow; it is merely required to remove all snow once the snow reaches the minimum two-inch accumulation.

Finally, Speedway cites *Commerce Bancshares, Inc. v. American Family Mutual Insurance Co.*, where the insured contracted to maintain the landscape of Commerce's property, requiring the insured "to visit the site weekly to perform clean up, and to maintain a regular systematic inspection routine of the premises," and prune trees that constituted safety hazards "at any time of the year as required," and perform these services "in a good and workmanlike manner and with all due safety precautions at all times." No. 4:14CV1562 JCH, 2016 WL 1161595, at *1, *4 (E.D. Mo. Mar. 23, 2016) (quotations omitted). When a customer was injured by the failure to trim vegetation, Commerce sought a declaration that it was covered under the additional insured endorsement, which provided that coverage for injury caused by acts or omissions "in the performance of [the insured's] ongoing operations" for Commerce. *Id.* at *2. The insurer argued that the additional insured coverage only applied when the insurer was on the premises and doing actual work, not during the entire duration of the service contract. *Id.* at *4. The court rejected this argument "because it improperly focuses on whether, at the time of the accident, [the insured] actively was providing landscaping

services." *Id.* (citing *Emps. Ins. Co. of Wausau*, 2008 WL 4066329, at *4). Instead, the court considered the terms of the service contract, which made clear that the insured had an "ongoing obligation to provide a safe environment with respect to tree trimming." *Id.* Here again, the terms of Lawn Monster's Service Contract define the scope of the duty. In contrast to the landscaping company, Lawn Monster's duty to plow was not continuous; it was triggered only by an accumulation of two inches of snow or a ticket from Speedway. *Cf. Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 F. App'x 148, at *2 (2d Cir. 2006) (holding district court did not err in finding snow removal company engaged in "ongoing operations" for entire contract period because the contract required it to prevent standing water from freezing).

With this case law in mind, the Court compares the Noethe claim to the relevant language in the Policy to determine whether Western National has a duty to defend Speedway. *Remodeling Dimensions*, 819 N.W.2d at 616. Noethe allegedly slipped and fell due to ice and snow buildup around Speedway's gas tanks. (ECF No. 35-1, Ex. B.) While one possible cause of the snow buildup is Lawn Monster's failure to remove all snow when it plowed the Speedway location on December 28, 2018 (the night before Noethe's fall), the Policy limits coverage to injuries caused, in whole or in part, by Lawn Monster's acts or omissions in the performance of its "ongoing operations" for Speedway. (Policy at 133.) Minnesota courts have defined "ongoing" as "currently taking place" and "in progress or evolving." *KBL*, 2004 WL 2660709, at *3 (citation omitted). The Service

17

Contract provides that Lawn Monster is not required to return to Speedway unless the snow accumulates to two inches or Speedway issues a ticket. As such, Lawn Monster's duties to Speedway under the Service Contract were not currently taking place, in progress, or evolving after it finished plowing the snow at the Speedway on December 28. The Court therefore finds that Lawn Monster's operations were not "ongoing" under the terms of the Service Contract when Noethe was injured on December 29, and under the plain terms of the Policy's Additional Insured Endorsement, Speedway is not an additional insured for the purpose of the Noethe claim.[6] Western National thus has no duty to defend or indemnify Speedway against the Noethe claim.[7]

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Western National Insurance Company's motion for summary judgment (ECF No. 36) is GRANTED;

---

[6] Because Speedway is not an additional insured under the Additional Insureds Endorsement, the Court need not address the parties' arguments regarding the endorsement's exclusion for completed operations. (*See* Policy at 133 (stating "[w]ith respect to the insurance afforded *to these additional insureds*, the following additional exclusions apply. . .") (emphasis added)).

[7] Speedway also requests attorneys' fees for successfully defending against a declaratory judgment action. (ECF No. 42 at 19.) Because Western National is the successful party, Speedway is not entitled to attorneys' fees.

2. Defendant Speedway LLC's motion for summary judgment (ECF No. 40) is DENIED; and

3. The Court DECLARES that the Policy issued by Western National to Lawn Monster, LLC does not provide coverage to Speedway for the slip and fall of Jane Noethe at the Speedway location in Mound, Minnesota, on December 29, 2018, and Western National has no duty to defend or indemnify Speedway in connection with any claim that Ms. Noethe may bring against Speedway with regard to that incident.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: December 15, 2020                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge